```
                 IN THE UNITED STATES DISTRICT COURT

                       FOR THE DISTRICT OF OREGON


BB, CB, JG, RG, WCL, DL,       )      CV 02-80-BR
WJL, DM, SS, RS, CS, and       )
SR,                            )      OPINION AND ORDER
                               )
          Plaintiffs,          )
                               )
v.                             )
                               )
CORPORATION OF THE             )
PRESIDENT OF THE CHURCH OF     )
JESUS CHRIST OF LATTER-DAY     )
SAINTS and its successors,     )
                               )
          Defendant.
```

**DAVID SLADER**
**DAYNA CHRISTIAN**
806 S.W. Broadway Ave., Suite 400
Portland, OR  97205
(503) 243-6336

          Attorneys for Plaintiffs

**STEPHEN F. ENGLISH**
**DAVID A. ERNST**
888 S.W. Fifth Ave., Suite 300
Portland, OR  97204-2089
(503) 228-6351

          Attorneys for Defendant


1  -  OPINION AND ORDER

**BROWN, Judge.**

This matter comes before the Court on Plaintiffs' Motion to Remand (#4) and Defendant's Rule 21 Motion to Dismiss Plaintiff CS, or, in the Alternative, to Sever and Transfer Plaintiff CS's Claim (#26).

Plaintiffs brought this action in Multnomah County Circuit Court for the State of Oregon on January 9, 2002, against Defendant Corporation of the President of the Church of Jesus Christ of Latter-Day Saints. On January 18, 2002, Defendant filed its Notice of Removal in which it asserted this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1332.

On August 2, 2002, the Court heard oral argument on the pending motions. During that proceeding, the Court concluded it did not have subject matter jurisdiction over this action on diversity of citizenship grounds. The Court, therefore, granted Plaintiffs' Motion to Remand to the extent Defendant removed this action on the basis of diversity. The Court took under advisement the portion of Plaintiffs' Motion that challenged whether this Court has subject matter jurisdiction on federal question grounds.

For the reasons that follow, the Court concludes it lacks subject matter jurisdiction over this action on federal

2  -  OPINION AND ORDER

question grounds.  The Court, therefore, **GRANTS** Plaintiffs' Motion to Remand and **DENIES as moot** Defendant's Motion to Dismiss.  Accordingly, the Court **REMANDS** this action to the Multnomah County Circuit Court for the State of Oregon.

## PLAINTIFFS' ALLEGATIONS

Plaintiffs are twelve men who allege they were sexually abused as children by Franklin Curtis, a "convicted felon and life-long compulsive child molester and pedophile."  At the time, Plaintiffs or their parents were actual or prospective members of the Church of Jesus Christ of Latter-Day Saints (the Mormon Church).  Curtis apparently is deceased.  Plaintiffs did not name him or his estate as a defendant.

Plaintiffs allege Curtis was a "member of the Mormon Church, an Elder of the Mormon Church and a Melchizedek Priest" or "High Priest" who was "'called' by his bishop" to provide religious instruction and to lead scouting activities for young boys.  Plaintiffs further allege Curtis sought and gained the "friendship, trust, admiration, and obedience" of Plaintiffs and the trust and confidence of their parents for the purpose of fulfilling his "assigned callings and priesthood duties."  In their Complaint, Plaintiffs also assert the Mormon Church represented to prospective and actual

3  -   OPINION AND ORDER

members that Curtis was "worthy, chaste and honorable."

Plaintiffs allege Defendant is the Utah corporation through which the Mormon Church operates its world-wide affairs.

**I.     Plaintiffs' First Claim**

All Plaintiffs join in the four separate Counts of the First Claim.

**A.     Count I - Sexual Battery of a Child**

Plaintiffs' allegations in Count I focus on the misconduct of Curtis.  Although Plaintiffs make no explicit allegation against Defendant in this Count, it appears Plaintiffs contend Defendant is vicariously liable for Curtis's conduct on a state law theory of actual or apparent agency because Curtis used the "power, authority and trust of his callings" with the Mormon Church and the Mormon Church's purported positive representations about him when he "enticed, induced, directed, and/or coerced" Plaintiffs to engage in sexual acts with him.

**B.     Count II - Negligence and Breach of Fiduciary Duty**

Plaintiffs' allegations in Count II focus on Defendant's own knowledge, actions, and omissions.  Plaintiffs allege Defendant knew Curtis "had an uncontrollable urge to engage in sexual acts" with boys, had done so previously, and "would

4   -   OPINION AND ORDER

continue to exploit his status and offices within the Mormon Church" to molest boys "if allowed to serve as a priest, youth pastor or scout leader or in any other capacity that allowed unsupervised contact with boys."  Plaintiffs also assert Defendant "knowingly allowed, permitted and encouraged Curtis's abuse" of Plaintiffs.

### C.   Count III - Statutory Tort

Plaintiffs allege Defendant violated Oregon's mandatory child abuse reporting statute, Or. Rev. Stat. § 419B.010 and its predecessors.  Plaintiffs assert the leaders of the Mormon Church were mandatory child abuse reporters who had the legal duty to report their knowledge of Curtis's sexual abuse of children. Plaintiffs further contend Curtis would not have been able to sexually abuse Plaintiffs if the church leaders had fulfilled their statutory duties by reporting Curtis's prior instances of abuse.

### D.   Count IV - Intentional Infliction of Emotional Distress

Plaintiffs allege Defendant knew it was substantially certain that Curtis would abuse boys like Plaintiffs sexually if he was permitted to have unsupervised access to them and that such abuse would result in the boys' severe emotional distress.  In addition, Plaintiffs assert Defendant's

"conduct," in light of this knowledge, was an outrageous violation of societal norms.

## II. Second Claim

Plaintiffs BB and SR bring a Second Claim for Intentional Infliction of Emotional Distress. Plaintiffs BB and SR allege "their bishop" humiliated, shamed, and blamed them when they disclosed Curtis had molested them. Plaintiffs BB and SR assert their bishop was acting in his capacity as Defendant's agent and servant when he engaged in this conduct. In addition, Plaintiffs contend their bishop's handling of their abuse allegations was an outrageous violation of societal norms.

## **STANDARDS**

Pursuant to 28 U.S.C. § 1441(a), an action filed in state court may be removed to federal court if the federal court would have had original subject matter jurisdiction over the action. Federal courts have original jurisdiction of "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

A motion to remand is the proper procedure for challenging removal. *See Northern Cal. Dist. Council of Laborers v. Pittsburgh-Des Moines Steel Co.*, 69 F.3d 1034,

6 - OPINION AND ORDER

1038 (1995).  The removal statute is strictly construed, and any doubt about the right of removal is resolved in favor of remand.  *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citations omitted).  The presumption against removal means "the defendant always has the burden of establishing that removal is proper."  *Id.* (citations omitted).

The plaintiff's "well-pleaded complaint" must state at least one claim arising under federal law for removal based on federal question jurisdiction.  *Ultramar America, Ltd. v. Dwelle*, 900 F.2d 1412, 1414 (9th Cir. 1990).  The court must determine whether the operative complaint states a claim arising under federal law by ascertaining "the legal construction of the plaintiff's allegations."  *Id.*  If a plaintiff "can maintain her claims on both state and federal grounds, she may ignore the federal question, assert only state claims, and defeat removal."  *Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996)(citations omitted).

"A defense that raises a federal question is inadequate to confer federal jurisdiction."  *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 808 (1986) (citing *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, (1908)).  This rule applies "even if the defense is anticipated in the

7  -  OPINION AND ORDER

plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case." *Gully v. First Nat'l Bank in Meridian*, 299 U.S. 109, 112 (1936).  *See also Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1319 (9th Cir. 1998) (defenses exogenous to a claim do not turn a state action into a federal one for purposes of federal question removal jurisdiction).  Nevertheless, a plaintiff may not plead around a federal question if the plaintiff's claim "necessarily depends" on federal law.  Federal question jurisdiction exists when federal law is a "necessary element of one of the well-pleaded state claims" even if the plaintiff attempts to ignore the federal issue in his complaint.  *Arco Envt'l Remediation, L.L.C. v. Dep't of Health and Envt'l Quality of the State of Montana*, 213 F.3d 1108, 1116 (9th Cir. 2000) (internal quotations and citations omitted).

### DISCUSSION

Defendant's Notice of Removal provides:

> This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because plaintiffs' right to relief under at least some of their state-law claims "requires resolution of a substantial question of federal law." *City of Chicago v International College of Surgeons*, 522 U.S. 156 (1997).  Resolution of such claims turns on whether the pre-emptive effect of the First Amendment to the United States

8  -   OPINION AND ORDER

> Constitution renders those claims nonjusticiable in any civil court. As to those claims, the First Amendment is not merely a defense, but, in fact, a complete constitutional preemption of the claims. Accordingly, such claims arise under the Constitution of the United States. *See* 28 U.S.C. § 1441(b).

Defendant contends this Court has federal question jurisdiction over Plaintiffs' claims. Defendant asserts resolution of at least some of Plaintiffs' state law claims depends on a substantial question arising under the First Amendment to the United States Constitution. According to Defendant, Plaintiffs seek to establish Defendant's liability for some of their state law claims based solely on Curtis's alleged status within the Mormon Church and that status can only be determined by examining the canons and doctrines of the Mormon Church. Defendant also asserts any such determination by a civil court or jury would violate Defendant's First Amendment rights pursuant to the Free Exercise and Establishment Clauses.

In contrast, Plaintiffs maintain their claims arise under state law and may be resolved on purely secular legal principles. Plaintiffs also argue any federal question before the Court arises only from Defendant's defenses to Plaintiffs' claims.

The First Amendment to the United States Constitution

9  -  OPINION AND ORDER

provides "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ."  Similarly, courts are restricted from reviewing internal church disputes that involve matters of faith, doctrine, church governance, and polity.  *See Kedroff v. St. Nicholas Cathedral*, 344 U.S. 94, 116-17 (1952).  The church autonomy doctrine, however, does not prevent courts from addressing church-related disputes that can be resolved solely on neutral, secular principles and do not involve religious precepts.  *Jones v. Wolf*, 443 U.S. 595, 604 (1989).

    At the outset, the Court notes not all of Plaintiffs' claims turn on Curtis's status in the Mormon Church.  For example, Count III of Plaintiffs' First Claim appears to be based on the failure of Defendant's agents to fulfill their statutory duty to report child abuse rather than Curtis's special status within the Mormon Church or his conduct toward Plaintiffs.  In addition, Plaintiffs' Second Claim depends on whether Defendant can be held liable for the alleged conduct of the bishop in his capacity as Defendant's agent and servant.[1]  This claim does not rely on Curtis's status in any

---

[1] Defendant argues this claim is nothing more than "an artfully pled claim for clergy malpractice based on deficient spiritual/ecclesiastical counseling."  Defendant's argument that Plaintiffs' theory of recovery is substantively

way.

On the other hand, Count I of Plaintiffs' First Claim focuses on Curtis's conduct allegedly taken "in furtherance of his assigned callings and priesthood duties" for the Mormon Church. Similarly, in Count II of their First Claim, Plaintiffs specifically allege Defendant is liable for "allowing" Curtis "in his capacity as [Defendant's] agent and servant" to have unsupervised contact with Plaintiffs. Count IV also seems to depend upon a principal-agent relationship arising from Curtis's status within the Mormon Church. Accordingly, the Court finds at least some of Plaintiffs' claims appear to depend on the existence of an agency relationship between Defendant and Curtis that theoretically could subject Defendant to vicarious liability under state law for Curtis's sexual abuse of Plaintiffs.

In any event, Defendant vigorously contests Plaintiffs' characterization of Curtis's status within the Mormon Church. Defendant contends Plaintiffs deliberately misuse and incorrectly attribute secular meanings to terms such as

---

insufficient, however, is a defense to the claim rather than a ground on which this Court can premise federal jurisdiction. If Plaintiffs have failed to state a claim under state law for these common law theories, Defendant may litigate that defense in state court as it did successfully in *Franco v. The Church of Jesus Christ of Latter-Day Saints*, 21 P.3d 198 (Utah 2001).

11 -   OPINION AND ORDER

"priest" and "elder."  Defendant asserts every active male in the Mormon Church belongs to a "priesthood" and holds certain titles therein.  Defendant further asserts Curtis was not ordained or employed by Defendant and did not hold any special ecclesiastical authority beyond those titles and roles generally associated with every active male member in the Mormon Church.[2]  Defendant contends, therefore, Plaintiffs' *prima facie* case with respect to Counts I, II, and IV of the First Claim unavoidably will force the Court to interpret the Church's religious doctrines and polity regarding priesthood authority in violation of Defendant's First Amendment rights.

As noted, a court generally may refer only to the face of the complaint when deciding whether federal question jurisdiction exists.  *See Ritchey*, 139 F.3d at 1319.  A defense to those claims that raises a federal question is inadequate to confer federal jurisdiction.  *Id.*  On their face, Counts I, II, and IV of Plaintiffs' First Claim do not arise from the First Amendment nor do they directly implicate

---

[2] As a result, Defendant asserts the remand analysis in this case is distinguishable from this Court's orders of remand in those  actions against the Roman Catholic Archdiocese of Portland  Church based on sexual misconduct of ordained priests.  *See, e.g., G.B. v. The Archdiocese of Portland in Oregon*, CV-01-1437 (J. Jones) (Order Adopting Amended Findings and Recommendations of Magistrate Judge Ashmanskas issued Mar. 18, 2002).

12 -   OPINION AND ORDER

Defendant's First Amendment rights. Although Plaintiffs' First Claim appears to be based, at least in part, on a principal-agent theory of liability, a jury could resolve the agency issues by relying on state law standards pertaining to the elements of actual or apparent agency without resorting to an unconstitutional examination of church law or doctrine. For example, to establish apparent agency under Oregon law, Plaintiffs must show Defendant held out Curtis as its agent and Plaintiffs justifiably relied on same. *See Kotera v. Daioh Intern. U.S.A. Corp.*, 179 Or. App. 253, 271 (2002). In contrast, to establish an actual agency relationship, Plaintiffs must show Curtis was subject to Defendant's control, Defendant consented to Curtis acting on its behalf, and Curtis consented to act in that capacity. *Id*. These standards do not necessarily require a jury to delve into the ecclesiastical teachings or beliefs of the Mormon Church. State law governs the existence of fiduciary relationships and dictates the *prima facie* elements Plaintiffs must prove to make a claim for breach of fiduciary duty or negligence under Count IV of the First Claim. These secular standards do not depend on church doctrines or philosophies. The Court, therefore, finds Plaintiffs' First Claim does not necessarily depend on federal law or an unconstitutional examination of

13 -   OPINION AND ORDER

Mormon doctrine or practice.

The Court, therefore, finds Defendant's affirmative defense to Plaintiffs' claims based on the church autonomy doctrine and Defendant's First Amendment rights are not a part of Plaintiffs' case-in-chief and, therefore, may not be considered for the purpose of determining whether federal question jurisdiction exists.  Accordingly, the Court concludes Plaintiffs' claims do not raise a substantial question of federal law.

## CONCLUSION

For these reasons, the Court concludes it lacks subject matter jurisdiction over this action.  The Court, therefore, **GRANTS** Plaintiffs' Motion to Remand (#4) and **DENIES as moot** Defendant's Motion to Dismiss (#26).  Accordingly, the Court **REMANDS** this matter to the Multnomah County Circuit Court of the State of Oregon.

IT IS SO ORDERED.

Dated this 4th day of September, 2002.

/s/ Anna J. Brown
_____
ANNA J. BROWN
United States District Judge
BB.CV-02-80.O&O.9-3-02.wpd

14 -   OPINION AND ORDER